United States v. José Padilla-Galarza Appeal No. 182078 Attorney Castro, please proceed. Yes, good morning, Your Honor. Attorney Castro, Land Court Appointed Counsel for Appellant Padilla-Galarza. Your Honor, at this time, I would like to address the most egregious errors that... Counsel, before you start, I believe you wanted to have a three-minute rebuttal. You may have that. That's correct. Thank you, Your Honor. The first error that I would like to argue is the failure of the district court to provide a cautionary instruction that Hernandez's confession to FBI agent Chavarria could not be used against Padilla and constitutes reversible error. Was such an instruction contemporaneously requested? It was never requested, and we have argued. In fact, this court has precedence... I wanted to establish that. And the confession, as I understand it, was used pursuant to a redaction agreement that was reached between the prosecution and the defense? Well, after the Bruton issue was denied by the court and the government then said it would redact, obviously, I mean, I think it was futile for defense counsel to continue insisting on a matter that had already been denied. I didn't ask you if it was futile. Did defense counsel agree to the introduction of the confession? Well, she agreed to the redaction. Right. The solution that the name be redacted, she agreed to that. Okay, and after she agreed to the redaction, did she then object to the introduction of the confession? Well, at some point during the testimony, she raised the Bruton problem, but to say that she specifically renewed her original motion where it was extensively argued that it shouldn't be allowed was not done. Right. Yes, Your Honor. Counsel, excuse me, but as the testimony was playing out, I mean, there was an objection in the midst of that testimony that the confession was being presented in such a way that the jury would clearly understand that there was a reference to Mr. Padilla. I mean, there were those kinds of specific objections during the course of the testimony. Yeah, she did raise that objection that the evidence was going to reflect that it was Padilla-Galarza. And if I may be allowed to state, the redaction was a worthless redaction because of the manner in which Chavarria testified about Hernandez's confession. If you look at her direct testimony, she identified all of the other co-defendants that Hernandez mentioned as participants. Padilla and Hernandez were on trial. She mentioned that Hernandez mentioned Indio. She mentioned that Hernandez mentioned Davila Rivera, who was a government witness. She mentioned Camacho as having been identified by Hernandez, who also testified. She also mentioned Torres Santiago, who also testified. So by the way she fashioned her testimony, the only other individual involved left was Padilla-Galarza. So to say that there was really a redaction is totally incorrect by the manner in which her direct testimony was developed, where the jury clearly knew that she was making reference to Padilla-Galarza. What makes matters worse is that in closing argument, she linked the identification made by Hernandez, where he stated that he was going to take her where he delivered the shotgun and took her to Barrio Macon. This is all part of... Counsel, there were no contemporaneous objections to that closing argument. Isn't that correct? That is correct, and I have argued that that was plain error, because although she had originally objected to the Gruton presentation of evidence, according to the case law, there was no clear indication that she was trying to waive that right, as the case law states. And that's why I think that that should not constitute a waiver. The prosecutor specifically went in and told how he took her to the place where the shotgun was delivered, then identified Barrio Macon, 118 Flores Street, which again is an improper way. There was no need for her to identify Barrio Macon, 118 Flores Street. All she had to state was, he took me to the place where he delivered the shotgun. Because obviously, by mentioning Barrio Macon, 118, which is what she said, you know who lived there, and you know the participation of Padilla and Jamar. So again, we have a situation where the case law is clear that a limiting instruction has to be given, even in the case where there may be... Let's agree that there was a clear and obvious error here. I know you fully understand what you have to confront, and that's the third prong of plain error. This issue gets us into the strength of the evidence. The evidence here for the government seems to be quite powerful in many ways. So could you please argue that prejudice prong of plain error? It seems to me that is the key to your success in this case. Yes, Your Honor. First of all, it goes against all of the case law that states that that instruction has to be given. Now, to say that the evidence was overwhelming, I think, is a misstatement of the evidence. The main witness, Your Honor, Davila, when she was interviewed on two occasions, along with the FBI, on February 16th and November 16th, she failed to identify Padilla-Galarza as being the person that brought the mustaches and fake disguises. She failed to identify a picture of him, and she even failed to identify him as a participant. What is clear in this case is that there was conflictive evidence, Your Honor. That it could have gone either way, well, certainly there was evidence on both sides of the fence, but what I submit was the killing blow was that confession of Hernandez, Your Honor, that clearly implicated Padilla-Galarza. Counselor, your client testified. He had to explain away why he is seen on video going to these stores buying, I guess, beards, masks, items that are clearly implicated in the robbery itself. That's a pretty tough thing to explain away, isn't it? Well, he gave an explanation that it was requested by Camacho that he wanted to buy some disguises, and he went with him, that there may be reason to doubt that testimony, as there may be reason to doubt the testimony of Davila, who alone with the FBI didn't identify him at all as a participant or didn't even recognize him by a photograph. To say the excuse that she's scared was scared is a stereotype argument that the government always raises when they have a problem with a witness, Your Honor. If she was scared when she was alone with the FBI, what made her unscared testifying in trial in front of Padilla-Galarza and pointing directly at him and saying, this is the first time that I'm making him a participant in this case, a trial. So, again, it's the government that has the burden to persuade that it was harmless beyond a reasonable doubt. And quite frankly, I think... No, that's not true, Mr. Castro. If this is on plain error, it's your client. Well, again... Who has the burden of proving the third prong of plain error review. Well, certainly there was error. Certainly the amount of testimony and the way it was presented clearly implicated Padilla-Galarza. And this court's presidents, the ones cited by the government, also support Padilla's position. In Rodriguez-Duran, the court mentioned that the court has to give an instruction that the statement can only be considered against the declarant and not the co-defendants. And even stated that a limiting instruction will not cure the error in those cases where the non-testifying defendant's extrajudicial statement is powerfully incriminating, as occurred in this case. The other case cited, Celestine Duran, the judge, gave the instruction, which clearly is distinguishable from this case. So, what we have is a clear violation of this court's presidents and Grutten. And, again, with the sort of conflictive evidence that existed on both sides of the fence, I think that there's a real, real possibility that the admission of that incriminating statement without the limiting instruction could have affected the verdict. I would like to pass to the second most egregious error, which I believe occurred when the judge refused to allow Padilla-Galarza to receive the jinx material personally, depriving him of the Sixth Amendment right to assistance and participate in his own defense. The district court here granted that motion the day after it was filed by the government. If you read that motion, it is contrary to this court's president because it's based on conclusory allegations and a broad speculative allegation of potential harm. The only reason advancing that motion was that Padilla-Galarza faced a lengthy imprisonment term. That does not satisfy the burden of establishing concrete grounds for not providing him the jinx. What happened, Mr. Castro, after the judge granted that motion? Was there a motion to vacate the court's order? Well, a request was made again at the beginning of trial for Melanie Carrillo who admitted that she had not been able to review the jinx with him, had not been able to review all the discovery. But there was no motion to vacate the protective order. That's my point. I understand that counsel wanted more time at trial to review the material with the defendant, which the protective order permitted her to do all along. Yes, but it's facetious to believe that under the circumstances of Melanie Carrillo's relationship with Padilla-Galarza that that was an effective remedy. In fact, even though she had a whole week to review jinx with him, she only saw him once and admitted at the beginning of trial that she had not been able to review the jinx with him, nor all of the discovery. And a request was made at that time. A request was made at that time. Mr. Castro-Lang, you may not speak over judges when they are asking you questions. Judge Salyer had a question for you. You will stop and listen to those questions and answer them before you proceed. I simply wanted to ask, Mr. Castro, the comments of counsel at the start of the trial with respect to the need for more time to review the jinx material and your response that counsel should have made the time or should have gotten it done. That doesn't go to the validity or invalidity of the protective order. That goes to your claim of ineffective assistance of counsel. Am I correct? Well, I agree that it does go to that. But she also made a request that he be allowed to receive the jinx, which was denied on a protective order that had no grounds, Your Honor. The cooperating witnesses were known. I mean, if you put this in context, once they testified, why didn't the judge give the jinx to him? They were already known. The only effect of not giving him the jinx is preventing him from being able to assist in his own defense. Your Honor, believe me, a client knows a lot more about a case than the lawyer. Giving that jinx only to her when she admitted that she did not review it with him and his constant complaints should have alerted the court that the remedy he was providing was ineffective because there was no relationship. She even requested that she be removed from the case because there was a complete lack of trust. How under these circumstances can it be said that there wasn't an abuse of discretion when the court denied giving him the jinx under those circumstances? Okay, I believe you have three minutes remaining. Yes, Your Honor. I'm sorry, on rebuttal. Can the court tell us whether you have more time now? We are over time, Judge. Okay, then we'll hear from you later, Mr. Castro-Lange. Yes, Your Honor. If you could mute your audio and video, Mr. Castro, and Mr. Allum, if you could proceed.  I want to first touch upon the Bruton issue. I think it's important to point out that none of Agent Chavarria's statements were facially incriminating. And in the Molina case, this court specifically observed that a particular case may involve numerous events and actors that no direct inference can be made from a neutral phrase that refers to a specific co-defendant. And in this particular case, Your Honors, we're dealing with a scene of a bank robbery at Banco Popular, a scene of an attempted Hobbs Act robbery at a credit union, a scene where one bomb device or decoy device was placed as a distraction, and another scene where a decoy device was placed as a distraction. And it is not accurate to suggest that all the players involved were specifically identified during trial. As a matter of fact, Miguel Torres, one of the government's cooperators, specifically testified that he was aware that people participated that he couldn't identify. Joan Davila mentioned that after they left the bank in the green Toyota Tercel, which, by the way, Mr. Padilla admitted was his vehicle, which he drove that very morning, the morning of the bank robbery, that as they got away, they got into a car. Excuse me. Yes, Your Honors. Counsel, I think, made the point that there may have been others involved in this scheme, these crimes, beyond those that the jury knew about. But in terms of other individuals, co-defendants, witnesses, whatever, all those that the jury was aware of, when this Hernandez statement was entered into the direct testimony of the agent, systematically, they were all referred to by name, except for Mr. Padilla. And only then was there a reference to an unidentified individual. So that, in effect, in that systematic way, the jury would have understood that this unidentified no-name individual, the redacted name, it could only be Mr. Padilla. So how do you respond to that argument? Your Honor, I would respectfully disagree with the premise of your question. The jury was actually made aware of other participants that were involved. I think what Your Honor is getting at is, could the jury surmise, or what I would respond is that the jury, sure, the jury could surmise, based on other independently admissible evidence, that Mr. Hernandez' confession may have referred to Mr. Padilla. For example, Mr. Hernandez admitted that he went to Party City, something that Mr. Padilla also admitted he did, and something that the videos clearly showed. Mr. Hernandez admitted that he went to Home Depot. Mr. Padilla also testified that he went to Home Depot to buy gloves a couple of days before the bank robbery, specifically four days before the bank robbery, and that's also something that the videos showed. Mr. Hernandez stated that he held meetings in his house to plan the bank robbery. When Mr. Torres, one of our cooperating witnesses, testified, he testified that, yes, he had meetings in Mr. Hernandez' house along with Mr. Padilla, and that they discussed a bank robbery. So, sure, I would certainly, I think it's, I don't think it takes a rocket scientist to figure out, perhaps, that Mr. Hernandez' statements, at least in some instances, may have referred to Mr. Padilla, but this court and the Supreme Court, Richardson, the Richardson decision, the Molina decision, make clear that when the inference of culpability from a non-testifying defendant's statement can only be inferred by linking it to other independently admissible evidence, that the rule of Grubin is not implicated. And if I may, Your Honor, I'd like to take a step back and argue that this claim is actually waived, and here's why. I understand that in the Molina decision, this court held that when a motion to sever is filed pretrial, that under those circumstances, a Bruton issue is preserved. Here, however, the motion to sever was premised on the assumption that the government was going to play the six-hour video of Mr. Hernandez' recorded statement to FBI agents. At a pretrial conference, the government made a representation to the court that it had no intention of doing that, that it would elicit Mr. Hernandez' statement through the agent, and after the court then said that the motion would be denied and that the statement would be redacted, Council for Padilla said, and I'm quoting from the transcript, perfect, Your Honor, we have no objection as long as, and if you read that in context with what the judge had just said, it's going to be redacted, the motion is denied, that suggests that Council was in agreement with the government's proposal. Excuse me, that statement, as long as, isn't Council simply saying, okay, this is a procedure, Judge, that you have blessed. I can accept that. I'm sorry, Your Honor, I'm having a hard time hearing something. The attorney understood how the statement was going to come in. Council said, okay, I understand that, as long as, isn't that simply a statement, let's see how it goes? You're not suggesting that by agreeing to the procedure, that is to have the statement come in through the agent in response to direct questions from the government, that he somehow forfeited any right to object to how it was then carried out at trial? Oh, no, no, no, no, no, no, not at all. What's the point of your argument then? Not at all. My point is that at trial there was no objection. So if an objection had actually been raised at trial, then perhaps the Bruton claim, I would agree, would be preserved. However, what Council stated at this pretrial conference was perfect, Your Honor, we have no objection, as long as, and then she didn't complete her thought, but I think if you read it in context, the context in which it should be read is, as long as the statement is redacted. And I should mention, Your Honor, that throughout the testimony of Agent Chavarria, throughout her testimony regarding Mr. Hernandez's statement, no objections were raised on Bruton grounds. Council for Mr. Padilla at one point requested a sidebar because she anticipated that the government, that the witness was going to venture into dangerous Bruton territory, and the government proposed a solution. And that proposal was, judge will ask leading questions to avoid the Bruton issue. The judge agreed. Council for both defendants at trial agreed. And that's how the government proceeded. There came a point when, I suppose, the government asked one leading question too many, that then Mr. Hernandez's lawyer raised a leading objection. And he even mentioned that Mr. Padilla's concern had been satisfied up until that point, and Council for Padilla assented. She did not protest. So we would argue that this issue was, it was raised. It was intentionally abandoned, relinquished. The proposal that the government, the government's proposal, it may or may not have survived the noble review. We don't know, but at this juncture, Your Honor, I would submit that it's waived. What is, did your waiver argument extend to the concerns about the failure of the court to give a unique instruction? Does it extend to the way in which the closing argument was made by the government? Are you saying that those, as opposed to those being plain air issues, you're arguing that those objections were waived? No, that's not, that's not the argument we, that's certainly not the argument that we made in our, in our brief. Four and a half minutes remaining. I'm sorry? You have four and a half minutes remaining. So I think you were beginning to respond. No, that's not quite the argument we were making as to the instructions and as to closing. Okay. Thank you, Your Honor. Thank you, Your Honor. Judge, no, the argument as to that, what we argue in our brief is that plain error applies to that. I mean, I think the court has to keep in mind, this is a trial with a very, that posed a lot of challenges to the district judge. This was a very difficult defendant, a very difficult trial to manage. The, the, we recognized in our brief that that instruction should have been given. However, we would submit that the defendant certainly has not met the third and fourth prongs of plain error review, because the evidence in this case, quite frankly, was, was overwhelming. We had two co-operators who directly implicated Mr. Padilla. We have cell site placing Mr. Padilla within half a mile of the bank during the time of the robbery, on the date of the robbery. We have, excuse me, we have toll records establishing patterns of communication between Mr. Padilla, Mr. Hernandez, and Mr. Camacho. We had, and I think if there is mentioning that Mr. Camacho was not the one who asked Mr. Padilla to go to Party City, as my, my adversary mentioned, it was, he went, he went to Party City with Mr. Hernandez and another individual. But in any event, the person who placed those decoy bomb devices at those two locations, he called Mr. Padilla three minutes after placing the second decoy device. Mr. Padilla admitted that the Toyota Tercel, that that getaway car was his car and that he drove it the morning of the robbery. He admitted at trial, through his own testimony, that he drove that vehicle to Jomar Hernandez's house on November 25th. He admitted that he had meetings in Mr. Hernandez's house. He admitted that he never told the agents that he sold the car to Mr. Camacho when he was first interviewed on the date of his arrest, which is something different from what he testified at trial. So quite frankly, the evidence in this case, your honors, is overwhelming. We recognize that that instruction should have been given, but the fact that that one instruction was not given is not a reason to reverse this case, throughout the course of the trial, be it through the testimony of cooperators, Mr. Padilla's own statements, toll records, self-cite. So unless the court has, if I may, if I may just have a moment to address the Jenks issue really quickly. Yes, go ahead. Thank you, your honor. With respect to the protective order, the government requested a protective order in part because Mr. Padilla is a repeat offender who was facing a lengthy term of imprisonment. And we cited case law in our, in our, in our submission to the district court as to the propriety of the protective order. At the pre-trial conference, when counsel for Mr. Padilla requested that that protective order be lifted, the government made a proffer that the government had two potential witnesses who it intended to possibly call at trial, who one became unavailable because he was serving a state sentence and fell off the roof. And the other was a co-defendant whose wife was killed prior to trial. So based on that, based on that argument, the judge declined to lift the protective order. Thank you. Any further questions from the panel? No. No. Okay. Thank you very much. Thank you. Mr. Castro-Lang, you've got three minutes. Very briefly, Your Honor, as to the last statement, what the government fails to tell the court is that they admitted that they had absolutely no evidence that those incidents that appeared to those other witnesses had any connection to Padilla-Galarza. Padilla-Galarza had previously been convicted and there was no evidence he had ever threatened anyone. The only reason advanced was that he was facing a lengthy prison term. Again, we want to emphasize the importance and we consider that the lack of an instruction is separate and an issue that can be reviewed under plain error. And that the government's argument violates all the Supreme Court's previous cases and this court's. In Richardson, the Supreme Court stated specifically that a limiting instruction that the jury is not to consider the confession is redacted has to not only eliminate the defendant's name but any reference to his existence. But if the confession implicates directly as occurred here, even Richardson does not apply. Your Honor, and this court, again, it always specifically found plain error in the failure to give the instruction. So here we not only have a direct implication, which would make the error more egregious, but a total failure to give the instruction. And obviously, Your Honor, although there was evidence about where Padilla lived or him going to Party City, there was testimony by Camacho, a co-defendant, and Padilla explaining, giving innocent explanations as to what he did. The Tercel had been sold and there were explanations that Padilla had left his tools in the car and he was trying to recover them. So there was conflictive evidence on both sides. And to say, Your Honor, that under those circumstances, the court is going to conclude that the failure to provide the instruction did not constitute plain error. It warrants reversal of the conviction. Quite frankly, I think the court is emasculating Bruton in its progeny. I think it is a fatal mistake. And if you look at all of the circumstances of this case, it cannot be said that the government's case was overwhelming because there was an explanation for every version that the government provided. The defense provided another version. And what was the killing evidence was Hernandez's confession that was used as direct evidence to convict Padilla Galarza, contrary to all of the court's precedence. So I think that would be all, Your Honor. Thank you. Thank you all. That concludes argument in this case. Attorney Castro and Attorney Allum, you should disconnect from the hearing at this time.